ISAÍAS PÉREZ, Plaintiff and Appellee, *v.* CELESTINO. CRUZ BATISTA, Defendant and Appellant.

No. 10016.   Argued February 8, 1950.—Decided March 6, 1950.

*José E. Bosch Roqué* and *Luis A. Archilla Laugier* for appellant.
*Manuel Torres Reyes* and *Sergio A. Silva* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Isaías Pérez filed in the District Court of Bayamón a complaint against Celestino Cruz Batista for the division of property owned in common. The complaint substantially alleges that the plaintiff and the defendant lived in concubinage from the year 1936 until June 1947 and that they established a community of property, both of them working in order to save part of the money obtained from their respective activities; that they started living together in Lajas in 1936, wherein they established a peddling business; that they next moved to Guayama and later to Orocovis being engaged in both towns in the aforesaid business; that from Orocovis they returned to Guayama and later on they moved to Ponce wherein they set up a grocery store; that from Ponce they went on to Santa Isabel wherein they continued this latter business; that from Santa Isabel they moved on to the Machuelo and Bayas wards of Ponce, wherein they undertook a dairy business; that this business failed and they moved again to Guayama wherein they entered once more into the peddling business and that from there they went on to the Island of Vieques, wherein they remained for about a year and four months establishing there a novelty shop and the peddling business; that after the defendant became ill in Vieques and having saved the sum of $475, they went to Bayamón wherein they established an underwear factory; that with the business established in Bayamón the plaintiff and the defendant

acquired with the lapse of time certain properties which are described, as well as merchandise and good will valued at $10,000, also having the sum of $5,000 deposited in the banks; that without any reason at all the defendant violently threw out the plaintiff from their home forbidding her to go into the house or the business, whereupon the concubinage ceased, and the community terminated. The plaintiff closes praying that the defendant be ordered to divide the community of property and that the plaintiff be given that part which the court deems is her legal share.

To this complaint the defendant filed a motion to dismiss for insufficiency. He also requested several particulars which were later supplied. Subsequently he filed his answer. He denied therein the essential facts of the complaint and alleged as special defenses the lack of facts to establish a cause of action as well as that during the years referred to, the plaintiff and the defendant maintained only the relationship arising from the concubinage during which years the defendant supported her and provided her with clothing and other necessities while she only took care of the household duties; that furthermore the defendant, since 1936, supported two children of the plaintiff; that both of them never agreed to share the property which they might accumulate and that the plaintiff never contributed with labor or capital which would entitle her to a particular share in defendant's property.

Issue being thus joined, the case went to trial and after hearing extensive oral testimony the lower court rendered a so-called "Statement of Facts, Opinion, and Judgment" declaring that 50 per cent of the property it specifies belongs to the plaintiff, including 50 per cent of the merchandise in the underwear factory located in Bayamón. It likewise ordered the defendant to pay the costs and $600 as attorney's fees. Feeling aggrieved by this judgment the defendant has taken an appeal and in support thereof he assigns ten errors to the lower court. ■ The first assignment is to the effect

that the latter committed error in overruling the motion to dismiss on the ground that the complaint did not state facts constituting a cause of action. At the beginning of this opinion we have set forth the essential averments of the complaint. We have examined it and, in our judgment, it states a cause of action according to our decision in *Torres* v. *Roldán*, 67 P.R.R. 342.

■ The second error assigned by the defendant to the lower court is that the latter erred in ordering in the judgment the division of the property owned in common. The appellant is not correct in this either. The court merely said in its Statement of Facts, Opinion, and Judgment, that the property it listed below belonged to the plaintiff and to the defendant share and share alike, and that it should be liquidated between them on the basis of 50 per cent for each one. It also said that according to the evidence the defendant after separating from the plaintiff began to sell the property and to make promissory notes over some of his properties and that since she deemed that those properties belonged to the plaintiff and to the defendant, the latter should give to the former her corresponding share in the properties thus sold or mortgaged. However, the court did not say in what manner this division should be made. Hence, this error could not have been committed.

■■ The third, fourth, fifth, sixth, eighth, and tenth errors were rather directed to the weighing of the evidence. These assignments are to the effect that the lower court erred (3) in not holding that the services rendered by the plaintiff to the defendant were incidental to the concubinage between them; (4) in finding proved the existence of a community of property without the execution of a partnership contract having been shown; (5) in finding that the plaintiff was entitled to a share of 50 per cent in defendant's property; (6) in not believing the testimony of the defendant to the effect that he had brought to the concubinage with the plain-

tiff the sum of $6,000; (8) in deciding that the property appearing in defendant's name before June 9, 1947 was the result of the work, economy, and effort of the plaintiff and of the defendant and that it belonged to both of them share and share alike and (10) in the weighing of the evidence.

As we have said the evidence was voluminous, plaintiff's testimony taking the first 125 pages of the transcript of evidence. In her extensive testimony the plaintiff states that about 1936 she worked as a maid in a small inn in the town of Lajas; that one day the defendant went there with a small bundle and that shortly thereafter he started making love to her and she listened to his love tales; that in said bundle the defendant had clothing materials and other peddling wares valued at around $60; that some days later they went to live in Guayama wherein they engaged in the peddling business; that some months later they heard that business was good in Orocovis and they went there but did not fare well. The plaintiff goes on setting forth in detail their hardships and the small businesses which they undertook subsequently in Santa Isabel, Ponce, several times in Guayama and in the Island of Vieques, wherein the defendant suffered a long illness and from where they came out one day bringing along the sum of $475 they had saved; that after landing in Fajardo they went towards the town of Bayamón wherein they leased a small room, and where a man by the name of Cheo Tejeras taught them to cut underwear and wherein they diligently worked from 1940 to 1947, when the defendant threw her out of the house and has refused to give her any share in the property acquired during the time they lived together. The plaintiff also said that in all those towns she "worked with him, living with him during all that time always with the idea that we would have something because the gentleman, (pointing at the defendant) always told me to work, that whatever we obtained was mine and his also." (Transcript of evidence, p. 33.) The record also contains oral testimony tending to corroborate the plaintiff's testimony.

Defendant's evidence was to the effect that about 1936 he came from the Dominican Republic to Puerto Rico bringing with him the sum of $6,000 in cash; that after visiting various towns he went towards Lajas where he met the plaintiff; that they started to live in concubinage from 1936 and continued until June 1947; that during all that time the plaintiff engaged only in her household duties and that she never took care of defendant's businesses nor did she interfere in any manner whatsoever therein; that when he met the plaintiff she had two children whom he has supported during the time in which she and he lived together; that the capital they have raised has been acquired through his effort and that he had in his own hands in cash the $6,000 he brought from the Dominican Republic until 1943 when he deposited them in a bank.[1]

The lower court found that the evidence was conflicting. It was, however, the one called upon to resolve in the first instace such conflict and it did so.. The fact that the plaintiff and the defendant lived in concubinage during the years in which the capital mentioned by the parties was raised, did not preclude her from being entitled to share therein if such capital is the result of the effort, work, and activity of the defendant and the plaintiff alike. As we said in *Torres* v. *Roldán, supra,* at pp. 343 and 344 ". . . a community interest in property . . . cannot be predicated solely on concubinage . . ." but ". . . even in the absence of such an express or implied agreement, in order to avoid unjust enrichment of the defendant, the plaintiff is entitled to share in the property jointly accumulated, in the proportion that her funds contributed toward its acquisition." See also Dr. Luis Muñoz Morales, *Reseña Histórica y Anotaciones al Código Civil de Puerto Rico,* Book 1, pp. 316, 327 *et seq.*

---

[1] The only documentary evidence in the record consists in a complaint for damages brought by Rita Morales Delgado against the parties herein and against plaintiff's child. That document was presented by the plaintiff in order to controvert the testimony of Rita Morales Delgado.

■■ The lower court deemed, as we have said, that the plaintiff was entitled to a share of 50 per cent in the property described. In cases of this nature the share of the woman must always be based on the contract entered into, and if such contract does not exist, on her labor and effort. In the present case the lower court decided that in the light of the facts before it, the plaintiff should receive 50 per cent of the capital raised. This action is supported by the evidence presented and we should not modify it.

■■ Nor do we believe that the lower court erred in not believing the testimony of the defendant to the effect that he brought $6,000 in cash from the Dominican Republic and that he kept said amount with him during seven years. It was hard, in fact, to believe such averments. Be it as it may that was a question to be weighed by the lower court.

The weighing of the evidence falls entirely within the sound discretion of the lower court and we shall not disturb such discretion unless we are convinced that in so doing the court committed manifest error or acted under the influence of passion, prejudice, or partiality. Not a single thing in this regard has been shown and the record contains sufficient evidence to support the findings of the lower court. *Varela* v. *Fuentes, ante*, p. 838 and cases therein cited.

■ The seventh assignment of error is that the lower court erred in not admitting evidence as to the debts contracted by the defendant in the course of his businesses prior to the date of separation of the concubines. This assignment of error, if taken separately, gives a prima facie impression that it was committed, but there is no such thing. According to the record Luis Angelet was called upon to testify as a witness for the defense and after stating that he works for Alonso Sobrino Hnos. Inc., and that he has known the defendant since the latter half of 1942 because the defendant used to visit them in order to buy merchandise, he was asked whether he was aware of the condition in June 1947 of Cruz

Batista's account with the firm for which he worked. The witness answered that at that time "Cruz Batista owed the house two thousand three hundred eighty-six dollars and eight cents." The attorney for the plaintiff objected saying that the books of the house were the best evidence. The court sustained the objection and ordered that the question and answer be stricken out whereupon the attorney for the defendant stated that he had no other question. The best evidence to show the amount owed by the defendant to the firm Alonso Sobrino were, undoubtedly, the books of the corporation and not the oral testimony of one of its employees. *Acevedo* v. *Dooley*, 52 P.R.R. 61, 66. Hence, the trial court acted correctly in sustaining the objection.

The defendant furthermore maintains that the trial court committed an error of law [2] in not complying with the provisions of Rule 52 (*a*) of the Rules of Civil Procedure.[3] As we said in *Ramírez* v. *District Court*, 65 P.R.R. 330, 331, the main purpose of said Rule "is to enable the Supreme Court to determine whether the findings of fact and conclusions of law of the district court were justified . . ." The Statement of Facts, Opinion, and Judgment of the lower court substantially complies with the requisites of Rule 52 (*a*). In the third and fourth paragraphs the court clearly sets forth the facts as found by it and in subsequent paragraphs it sets forth the law which in its opinion should be applied to such facts. The aforesaid Rule was no doubt substantially complied with. See *Varela* v. *Fuentes, supra.*

The judgment appealed from will be affirmed.

---

[2] This is the ninth assignment of error.

[3] Rule 52 (*a*) insofar as pertinent provides: "In all actions the court shall set forth the facts as found by it and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; . . ."